UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JASON MORGAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:14-cv-01407-JCH |
| | ) | |
| PLAZA MOTOR COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Plaza Motor Company's ("Plaza") Motion for Summary Judgment. (ECF No. 22.) The matter has been fully briefed and is ready for disposition.

## BACKGROUND

The summary judgment record in this case demonstrates the following. From 2001 through mid-February 2014, Morgan was employed at Plaza's Mercedes-Benz dealership as a service technician. Beginning in 2010, he was supervised by Service Manager Matthew Prunty. Morgan's employment was terminable at will. (Complaint, ECF No. 1.3 ¶¶ 4-6; Def. Ex. A, ECF No. 23.1 at 4; Pl. Ex. 1, ECF No. 26.1 at 1.)

In January 2013, Morgan injured his right forearm while tightening a bolt at work. He was temporarily placed on restricted duty. He was able to return to work full duty with no restrictions from March 12, 2013 until he underwent surgery on August 9, 2013. On October 14, 2013, he was he was able to return to work full duty. In November 2013, he injured his left arm while pulling a wheel off of a vehicle at work. He was placed on restricted duty and was off of work from November 8, 2013 until December 2013. He returned to work full duty from

1

December 17, 2013 until February 12, 2014. Plaza accommodated the restrictions Morgan's physician imposed in relation to his injuries. (Def. Ex. A at 14-17.)

Throughout Morgan's employment with Plaza, Plaza's Employee Handbook contained a policy pertaining to parts and scraps (hereinafter, the "Policy"). The Policy prohibited employees from removing or using any parts or scraps from Plaza without authorization from management. (Def. Exs. D-E, ECF Nos. 23.4-23.5.) Morgan had access to the Employee Handbook, and according to Prunty, all employees were aware of the Policy. (Def. Ex. A at 5; Def. Ex. H, ECF No. 23.8 at 3, 16.)

Prunty testified that in 2013 the following events occurred with respect to Plaza's enforcement of the Policy. Prior to November 2013, Plaza experienced "issue[s]" with employees taking tires, battery cores, and scrap metal. The Parts Manager, who observed employees taking materials, notified Prunty of the issue. Prunty did not consider it "stealing at that time," because he didn't "think [they] ever had an official word about the tires part of it." In November 2013, Prunty held a meeting with all of the technicians and several managers, during which he stated that "[they were] done having problems with people taking things"; he "made it very clear to everybody that nothing be removed from the premises without [proper] authorization"; and he warned that violations of the rule could lead to termination. Prunty also "verbally kept spreading the word to everybody." (Def. Ex. H at 7-10.)

Morgan's Team Leader, Kenneth Niedbalksi, testified that, although Prunty had "spelled out" in a 2010 service meeting that employees needed to go through him if they wanted "to take something out of the shop," Prunty had not informed Niedbalksi that employees taking parts without permission had become an issue. (Def. Ex. A at 25; Pl. Ex. 2, ECF No. 26.2 at 7; Pl. Ex. 3, ECF No. 26.4 at 9.) Plaza's Human Resources Manager, Dorian Hobbs, testified that Prunty

2

never reported to him that the taking scrap material had become a problem. (Pl. Ex. 4, ECF No. 26.4 at 2.) Morgan testified that it was "common work practice" for employees to take used parts and scraps for personal use. He specifically identified one employee who took copper from the oil drains, others who took "wheel weights," and another who took "gears and decorative pieces." (Pl. Ex. 2 at 2-3.)

On February 12, 2014, one of Morgan's co-workers informed Hobbs that Morgan had placed wheels in his personal vehicle and was going to take them. Hobbs spoke with Morgan and discovered that the wheels were in fact in Morgan's vehicle. (Def. Ex. F, ECF No. 23.6 at 5-6.) Morgan admitted that he did not obtain permission before taking the wheels; that he had taken the wheels so that he could make a stool for his work area; and that he was unaware doing so would create an issue, as he had observed his coworkers engage in similar conduct. (Def. Ex. A at 6; Def. Ex. G, ECF No. 23.7.) Hobbs informed other members of management regarding the situation, including Prunty, and they all decided that termination was appropriate. When Hobbs contacted Prunty, Prunty stated that he wanted Morgan terminated because he had "said over and again about things missing," and because "it was theft." The same day, Hobbs informed Morgan that he was terminated. At the time, Hobbs was aware Morgan was scheduled for surgery the next day. According to Niedbalski, Morgan was terminated sometime between 7:30a.m. and 8:30a.m. (Def. Ex. F. at 7-8; Pl. Ex. 1 at 13; Pl. Ex. 3 at 10-11.) On February 13, 2014, Morgan underwent surgery on his left arm. (Def. Ex. A at 14, 17.)

Morgan filed a Workers' Compensation claim for each of his injuries; he filed his first claim in February 2013, after his first injury. Plaza compensated him for his pain and suffering and his lost wages, including lost wages for approximately 12 weeks after his termination. Morgan's inability to work after his second surgery was temporary. In April 2014, he was able

3

to return to work full duty, and he secured employment at another dealership. (Def. Ex. A at 14, 16-20.)

Generally, when a service employee at Plaza is out for an extended period of time, the team member is not replaced and the team just operates with one less person. (Pl. Ex. 1 at 4.) Morgan testified that when he reported his second injury, Prunty seemed "upset," and stated, "why does this keep happening to you" and "[y]ou're too young for this"; Hobbs stated "you shouldn't have these types of injuries"; and Niedbalksi stated, "[y]ou got to be kidding me, again." (Pl. Ex. 2 at 7.) Other employees also "mock[ed]" and "harass[ed]" him; for example his coworkers would make comments such as "I wish I could get hurt too so I wouldn't have to come to work." *Id.* at 8.

In Plaza's Responses and Objections to Plaintiff's Second Interrogatories, Plaza stated: "Defendant has not had to discipline other employees for violations of [the Policy] other than [Morgan]. Under information and belief, Plaza employees who have desired to take used parts or scrap from Plaza have requested permission to do so from the appropriate supervisors." (Pl. Ex. 7, ECF No. 26.7 at 3.) Prunty testified that he never "caught anyone" in his department taking used parts or scraps, and that he did not discipline or terminate any other employees—apart from Morgan—for doing so. (Pl. Ex. 1 at 11-12.) Hobbs testified that he had terminated other employees for violations of the Policy, and during his deposition he specifically identified several individuals. (Def. Ex. F at 5, 10-11.)

In July 2014, Morgan filed suit against Plaza in the Circuit Court of St. Louis County. In his two-count Complaint, he asserts retaliatory discharge, in violation of the Missouri Workers' Compensation Laws, and disability discrimination, in violation of the Missouri Human Rights

4

Act ("MHRA"). (Compl., ECF No. 1.3.) Plaza timely removed the action to this Court. (Notice of Removal, ECF No. 1.) Plaza now moves for summary judgment. (ECF No. 22.)

## SUMMARY JUDGMENT STANDARD

In diversity cases such as this, the Court applies state substantive law and federal procedural law. *Gasperini v. Ctr. for Humanities Inc.*, 518 U.S. 415, 427 (1996). Summary judgment is appropriate when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The substantive law determines which facts are material, and only disputes over "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary judgment stage, the Court must view the facts in a light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The moving party bears the initial responsibility of informing the district court of the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party discharges this burden, the nonmoving party "must set forth specific facts demonstrating that there is a dispute as to a genuine issue for trial." *Anderson*, 477 U.S. at 248 (internal quotations omitted). "[T]he party opposing summary judgment may not rest on the allegations in its pleadings; it must set forth specific facts showing that there is a genuine issue for trial." *United of Omaha Life Ins. Co. v. Honea*, 458 F.3d 788, 791 (8th Cir 2006) (internal quotation and citations omitted). An issue of fact is genuine when the evidence is such that "a reasonable jury could return a verdict for the nonmoving party" on the question. *Anderson*, 477 U.S. at 248. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be

insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

The Court is mindful of the Missouri Supreme Court's statement that "[s]ummary judgment should seldom be used in employment discrimination cases, because such cases are inherently fact-based and often depend on inferences rather than on direct evidence." *Daugherty v. City of Maryland Heights,* 231 S.W.3d 814, 818 (Mo. banc 2007).

## **DISCUSSION**

### *A.     Retaliatory Discharge Claim*

Missouri Revised Statute Section 287.780 is a "statutory exception to the at-will employment doctrine and provides: 'No employer or agent shall discharge or in any way discriminate against any employee for exercising any of his rights under this chapter. Any employee who has been discharged or discriminated against shall have a civil action for damages against his employer.'" *Templemire v. W&M Welding, Inc.*, 433 S.W.3d 371, 382-84 (Mo. banc 2014) (quoting Mo. Rev. Stat. § 287.780). "[T]o make a submissible case for retaliatory discharge under section 287.780," an employee must demonstrate (1) that he was employed by the defendant before injury, (2) that he exercised a right under section 287, (3) that his employer discharged or discriminated against him, and (4) that the exercise of his rights under section 287 was a "contributing factor" to his discharge or the employer's discrimination. *Id.* at 377-84.

The only element in dispute here is whether there was a causal relationship between Morgan's filing of his Workers' Compensation claims and his subsequent termination. Plaza asserts that Morgan has failed to show that Plaza's decision to terminate him was motivated by his filing of his claims, as opposed to his violation of the Policy. Plaza argues that Morgan has not identified any employee who was similarly situated but treated differently, and that mere

temporal proximity between Morgan's policy violation and his surgery is insufficient to "create the specter of causality." (ECF No. 24 at 4-8.) Morgan asserts that that the motive behind Plaza's decision to terminate him is a question for the jury. He argues that there is "bountiful evidence" showing that he was "questioned about his injuries, doubted and harassed," and that the evidence raises a genuine dispute as to whether the use of scrap material was ever cause for immediate dismissal at Plaza. (ECF No. 27 at 7.)

As Plaza acknowledges in its summary judgment brief, "the 'contributing factor' causation standard is a low threshold." Having reviewed the record in this case as a whole and in a light most favorable to Morgan, the Court finds that the evidence demonstrates more than mere temporal proximity between Morgan's policy violation and his surgery. The evidence shows that two of Plaza's decision makers made comments to Morgan that he "was too young" to be getting injured so frequently, and that he "shouldn't have these types of injuries." The evidence further shows that the Parts Manager had observed other employees taking parts and scraps, that she had notified Prunty of such, but that Prunty did not discipline or terminate other employees for violating the Policy. Moreover, the evidence also contains conflicting testimony regarding whether Prunty made efforts to reinforce the Policy in November 2013, and whether the Policy was enforced against other employees at Plaza. Although Prunty testified that he "verbally kept spreading the word to everybody," Hobbs and Niedbalksi testified that Prunty did not report to them that the taking of parts and scraps had become an issue. In addition, although Prunty's testimony and Plaza's Responses to Interrogatories indicate that no other employees were terminated for violating the Policy, Hobbs testified that there were other employees who had violated the Policy. Without weighing the evidence and the credibility of various witnesses, the Court cannot conclude that it is beyond genuine dispute that Plaza's purported reason for

7

terminating Morgan was the sole reason, or that Morgan's filing of his Workers' Compensation claims was not a contributing factor to his termination.

Because genuine issues of material fact surrounding Morgan's termination exist, Plaza is not entitled to summary judgment as a matter of law on Count I of the Complaint.

## B. *Disability Discrimination Claim*

The Missouri Supreme Court has reiterated that in deciding cases under the MHRA, courts "are guided by both Missouri law and federal employment discrimination caselaw that is consistent with Missouri law." *Daugherty*, 231 S.W.3d at 818. Where, as here, a plaintiff "relies on indirect proof of discrimination, claims of…disability discrimination under the MHRA, like those under the federal anti-discrimination statutes, are analyzed under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*," 411 U.S. 792 (1973). *Schierhoff v. GlaxoSmithKline Consumer Healthcare, LP*, 444 F.3d 961, 964 (8th Cir. 2006) (citation omitted). Plaintiff must first "set forth a prima facie case in order to shift the burden of producing a legitimate, nondiscriminatory reason for the employment decision to the employer." *Id.* at 964-65 (citations omitted). "If the employer proffers a nondiscriminatory reason, then the employee must prove that the reason is a pretext for discrimination." *Id.* at 965 (citation omitted).

To establish a prima facie case of disability discrimination under the MHRA, a plaintiff "must show that at the time in question [he] was disabled, was qualified to perform the essential functions of [his] job with or without reasonable accommodation, and was terminated under circumstances that raise an inference of unlawful disability discrimination." *Mole v. Buckhorn Rubber Prods., Inc.*, 165 F.3d 1212, 1216 (8th Cir. 1999) (citation omitted); *see also Hervey v.*

*Mo. Dep't of Corr.*, 379 S.W.3d 156, 160 (Mo. banc 2012) (citation omitted) (plaintiff must show, inter alia, that he is "legally disabled").

Here, the parties dispute whether Morgan was disabled within the meaning of the MHRA. The MHRA defines "disability," in pertinent part, as "a physical or mental impairment which substantially limits one or more of a person's major life activities, being regarded as having such an impairment, or a record of having such an impairment, which with or without reasonable accommodation does not interfere with performing the job." Mo. Rev. Stat. § 213.010(4). A "disability under the statute must substantially limit or be perceived to substantially limit a major life activity, such as communication, ambulation, self-care, socialization, education, vocational training, employment, and transportation." *Cook v. Atoma, Int'l of Am., Inc.*, 930 S.W.2d 43, 46-47 (Mo. Ct. App. 1996) (quotation and citation omitted). To establish a "regarded as" disability under the MHRA, a plaintiff must show that the employer either "(1) wrongly believed that he had an impairment that substantially limited one or more major life activities or (2) wrongly believed that an actual, non-limiting impairment substantially limited one or more major life activities." *Daugherty*, 231 S.W.3d at 821 (citations omitted).

Plaza argues that Morgan's injuries were "transitory" and were "not a true disability," and that there is no evidence showing Plaza regarded him as disabled, or limited his work duties based upon such misconception. (ECF No. 24 at 9-13.) Morgan argues that Plaza perceived him to have a disability. Morgan references the comments his supervisors and co-workers made to him regarding his injuries, and he contends that there was "a perception that he was not able to work the same as before and was in danger of being injured again." (ECF No. 27 at 7-9.)

Here, Morgan offers no evidence demonstrating that Plaza perceived him to have any long-term residual effects from his injuries or surgeries that substantially limited any of his major

life activities—namely, his employment. Instead, the evidence shows that Morgan returned to work full duty without restrictions after his first surgery and after his second injury. *See Cook*, 930 S.W.2d at 47 (impairment or injury that is temporary is not actionable due to its transitory nature in that injury does not significantly limit individual permanently; injury that is "medically treatable without significant residual symptoms" does not rise to level of disability under MHRA because major life activity is not permanently substantially limited). The comments made by Morgan's supervisors can be construed—at most—as suggesting that Plaza perceived Morgan as an individual prone to injury. However, Morgan cites no authority—nor is the Court aware of any—supporting the proposition that predisposition to injury is a limitation or impairment falling within the protective ambit of the MHRA. *See Breikreutz v. Cambrex Charles City, Inc.*, 450 F.3d 780, 784 (8th Cir. 2006) ("Regarding an employee as having a limitation that is not itself a disability cannot constitute a perception of disability.").

Thus, the Court concludes that Morgan has failed to raise a genuine dispute as to whether he was disabled within the meaning of the MHRA. Therefore, Plaza is entitled to summary judgment on Count II of the Complaint.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Plaza Motor Company's Motion for Summary Judgment (ECF No. 22) is **GRANTED in part**, and **DENIED in part**.

**IT IS FURTHER ORDERED** that Count II of Plaintiff Jason Morgan's Complaint is **DISMISSED with prejudice**.

Dated this 20th day of November, 2015.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE